Willie E. GRAY, et ux, Plaintiffs–Appellees,

v.

BOYLE INVESTMENT COMPANY, Defendant–Appellant,

Dorothy Lester, Dunlap Cannon, III and Grover McCormick, Individually and as Executor of the Estate of Porter Thomas, Defendants–Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Aug. 9, 1990.

Rehearing Denied Oct. 3, 1990.

Application for Permission to Appeal Denied by Supreme Court Dec. 31, 1990.

Robert L. Dobbs, and Michael L. Agee, Memphis, for plaintiff-appellees, Willie E. Gray, et ux.

Lanier Fogg, Memphis, for defendants, Dorothy Lester, Boyle Inv. Co., and Dunlap Cannon, III.

Jimmie D. Drewry, Memphis, for defendant, Grover McCormick.

CRAWFORD, Judge.

This is a suit by purchasers of real estate to recover the purchase price paid. Plaintiffs, Willie E. Gray and wife, Carrie M. Gray, filed their complaint on December 19, 1983, against defendants, Dorothy L. Lester, Boyle Investment Company, Grover McCormick, as Executor of the Estate of Porter Thomas, and Grover McCormick, individually, and Dunlap Cannon, III, attorney, individually.

The complaint alleges that plaintiff contracted on August 3, 1983, to purchase the property known as 3182 Winslow Street in Memphis, Tennessee, and that the title to the property was recorded in the name of Porter Thomas, who was then deceased. The complaint avers that Grover McCormick was the duly appointed executor of Porter Thomas' estate and that the real estate brokerage firm for the sale of the property on behalf of the owner was Boyle Investment Company who acted at all times through its employee and agent, defendant Dorothy L. Lester. The complaint further avers that the attorney for the transaction was defendant Dunlap Cannon, III. The Grays allege that the closing of the transaction occurred on August 10, 1983, and that, at that time, they delivered a check for the closing in the amount of $11,063.02 and were given keys to the property together with copies of the closing papers, which are attached as exhibits to the complaint. (These papers are a buyer's settlement sheet, a seller's settlement sheet, a copy of a warranty deed from Grover McCormick, Executor of the Estate of Porter Thomas to plaintiffs and a copy of what purports to be the beginning part of an affidavit regarding liens, encumbrances and other defects in the title to the property.)

The complaint further avers that after the closing the Grays began repairs on the property and upon the completion of the repairs discovered that the locks on the house had been changed and a note had been placed on the door notifying them that the holder of the first mortgage had foreclosed on the property and that the property had been sold to an individual named Jimmy Carter. They aver that they had no knowledge of any pending foreclosure and that they had no knowledge that the mortgage on the property (which they were to assume) was in arrears. They aver that "each of these defendants were negligent in their handling of their respective responsibilities under the contract herein sued on, and that as a direct and proximate result, each contributed to or brought about the resulting loss and damages to the plaintiffs."

The answer of Dorothy Lester and Boyle Investment Company admits that Dorothy Lester signed the contract in her capacity as a real estate agent and denies that they were guilty of negligence as alleged.

The answer of Dunlap Cannon, III, avers that the real estate sales contract was executed by Lovie Hicks, who was the sole beneficiary of the will of Porter Thomas. He admits that he knew that foreclosure proceedings had been initiated on the property before the closing took place. The answer avers that the Veterans Administration informed him that the proceedings would be "dropped" upon payment to the Veterans Administration of the arrearage in note payments which were tendered to the Veterans Administration on August 11, 1983. Notwithstanding the representation of the Veterans Administration, the foreclosure proceeded and the property was

sold to a Jimmy Carter. Cannon's answer denies that he was guilty of negligence which caused the loss to plaintiffs.

Grover McCormick's answer admits that there was a contract for the sale of the property and that Dorothy Lester, on behalf of Boyle, was the agent. The answer further admits that the property was closed on August 10, 1983, and that defendant Dunlap Cannon, III, presided as the closing attorney. He admits that the proceeds of the sale were given to him as the seller but denies that he was guilty of any negligence which caused loss to the plaintiffs.

A non-jury trial was held June 2, 1986. A transcript of the proceedings indicates that the two plaintiffs were the only witnesses to testify in open court. Plaintiffs also introduced, as part of their proof the pretrial discovery deposition of defendant Dorothy Lester. There was no testimony from any of the other defendants.

Plaintiff's proof established that defendant Dorothy Lester is a real estate agent affiliated with Boyle Investment Company and had a listing contract to sell the residence at 3182 Winslow which was signed by Lovie Hicks, who was the sole beneficiary of the Porter Thomas' Estate. On August 3, 1983, a real estate sales contract was entered into between the plaintiffs and Lovie Hicks whereby Lovie Hicks agreed to sell to the plaintiffs the property for the sum of $11,563.02 cash, plus the assumption of a loan held by the Veterans Administration with an approximate balance of $3,436.98. The seller, Lovie Hicks, agreed to pay Boyle Investment Company a real estate commission in the amount of six percent and defendant Lester signed the contract on behalf of Boyle acknowledging receipt of earnest money paid by the plaintiffs in the amount of $500.00. Plaintiffs signed the contract on August 3, 1983, at the time they tendered the $500.00 earnest money to defendant Lester.

Prior to the signing of the contract, defendant Lester had spoken to Jerry Whitehurst at the Veterans Administration and was informed that the mortgage loan on the property was in arrears and that a payment of $404.00 would bring the matter up to date. She was advised that foreclosure proceedings had been instituted and she informed defendant Grover McCormick, the Executor of the Porter Thomas Estate, and Dunlap Cannon, III, the closing attorney, of the arrearage in the mortgage loan payments and the imminent foreclosure.

After the contract of sale was signed on August 3, defendant Lester turned the matter over to Dunlap Cannon as the closing attorney. The closing of the sale was scheduled for and did take place on August 10, 1983. Plaintiff gave Cannon a check for $11,063.62 which they obtained by withdrawing funds from their credit union account which was, at that time, bearing eight percent interest. The closing statements indicate that the plaintiffs paid to Dunlap Cannon an attorney's fee and also a closing fee. At closing, plaintiffs were furnished copies of the settlement statements, a copy of a warranty deed, showing the grantor as Grover McCormick, Executor of the Estate of Thomas and a copy of what purports to be an affidavit which was unsigned concerning possible liens and defects in the title to the property. They were never at any time informed that there was any arrearage in the mortgage loan which they assumed, nor were they informed that there were any foreclosure proceedings pending.

After the closing, the plaintiffs commenced doing some work on the property and about the time they finished the work they discovered that someone had changed the locks on the doors to the house and that there was a sign on the property advising them that the property had been foreclosed and had been purchased by an individual named Jim Carter. The foreclosure occurred on August 18, 1983, completely unbeknownst to the plaintiffs. Defendant Lester testified that she thought that defendant Cannon and defendant McCormick would take care of the V.A. loan problem, but admits that she never advised the plaintiffs of the problem.

At the conclusion of the trial on June 2, 1986, the trial court took the matter under

advisement and on April 27, 1988, plaintiffs filed a motion to enter judgment. On June 15, 1988, the chancellor wrote to counsel for both parties and advised them that judgment should be for plaintiffs against Boyle Investment Company for the sum of $11,063.62 plus attorney's fees and costs, specifically noting that "it is the intention of the court to restore the parties to the status quo." An order of judgment was entered August 25, 1988, which provided for recovery by plaintiffs against Boyle Investment Company in the amount of $11,063.62, plus attorney's fees and costs. The order also dismissed the case as to defendants, Lester, McCormick and Cannon.

On September 13, 1988, plaintiffs filed a motion for new trial and/or additur seeking prejudgment interests, additional expenses and attorney's fees. On February 21, 1989, an order was entered granting plaintiffs prejudgment interest at the rate of eight percent per annum from the date plaintiffs withdrew their money from their credit union account to the date of the judgment on August 25, 1988. The order also allowed recovery for additional costs incurred by the plaintiffs for a total judgment of $20,-354.66. Boyle Investment Company filed its notice of appeal within 30 days after entry of this order.

Appellant Boyle Investment Company has presented three issues for review by the Court which, as stated in its brief, are as follows:

1. Did the trial court err in granting a judgment for Plaintiff against Defendant Boyle Investment Company?

2. Did the trial court err in granting an award of attorney fees against Defendant Boyle Investment Company?

3. Did the trial judge err in granting Plaintiffs' post-petition Motion for costs?

Plaintiffs-appellees present an additional issue for review which, as stated in their brief, is:

Whether the trial court erred in failing to find all the defendants—Boyle Investment Company, Dorothy Lester, Dunlap Cannon, III and Grover McCormick Individually and as Executor of the Estate of Porter Thomas—jointly and severally liable to the plaintiffs for their loss.

We will consider appellant's first issue for review together with the appellee's issue presented for review. For clarity, we repeat the issues again:

Did the trial court err in granting a judgment for Plaintiff against Defendant Boyle Investment Company?

Whether the trial court erred in failing to find all the defendants—Boyle Investment Company, Dorothy Lester, Dunlap Cannon, III and Grover McCormick Individually and as Executor of the Estate of Porter Thomas—jointly and severally liable to the plaintiffs for their loss.

■ Boyle Investment Company contends that there was no breach of duty on its part and that its agreement was limited to that stated in the contract which was to hold the earnest money in trust subject to the terms of the contract.

It is undisputed that defendant Lester was at all pertinent times acting as the agent, servant and employee of Boyle and thus Boyle is bound by the actions of Lester. The proof is undisputed that Lester knew foreclosure proceedings were in progress at the time she procured the execution of the contract by and between the plaintiffs and the seller. The proof is also undisputed that defendant Lester failed to inform plaintiffs of this fact, thus the plaintiffs were deprived of an opportunity to make an election as to whether to enter into the contract, and even more so, deprived of their opportunity to protect their interest by seeing that the foreclosure was halted. It was only after the foreclosure had occurred that plaintiffs received any notice whatsoever.

In *Hughey v. Rainwater Partners*, 661 S.W.2d 690 (Tenn.App.1983), the Court stated:

... Where a broker acts as an intermediary between a seller and purchaser, the broker is under a duty to deal fairly and honestly with both parties. *See Bell v. Strauch*, 40 Tenn.App. 384, 292 S.W.2d 59 (1954). He owes a duty of honesty, candor and fair dealing to those with

whom he deals even in the absence of an express principal and agency relationship. 12 C.J.S., *Brokers*, § 107, at 307. This principal was applied in *Hopkins v. Wardley Corp.*, 611 P.2d 1204 (Utah 1980),....

661 S.W.2d at 691.

■ Obviously, the fact that foreclosure proceedings were in progress has a great deal to do with the quality of the real estate involved and it is undisputed that plaintiffs were not informed of these proceedings by defendant Lester. Boyle, through defendant Lester, was acting as the agent for the seller and each party to a contract is bound to disclose to the other all that is known respecting the subject matter which materially affects a correct view thereof unless common observation or ordinary diligence would have furnished the information. *Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295 (1947). Obviously, an ordinary citizen would not search the foreclosure notices published in trade papers for any notice concerning property which he is purchasing and which will be handled by a closing attorney. As a general rule, a party may be held liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentation. *Macon County Livestock v. Kentucky State Bank*, 724 S.W.2d 343 (Tenn.App. 1986). The trial court erred in dismissing the case as to defendant Lester and correctly held against defendant Boyle.

■ As to defendant Cannon, the closing attorney, the proof is undisputed that he charged plaintiffs an attorney's fee and purported to close the transaction whereby plaintiffs would acquire title to the property in question. Where attorneys charge all parties for services in connection with a real estate transaction, there is nothing unusual or harsh in requiring the exercise of reasonable care toward all concerned. *Stinson v. Brand*, 738 S.W.2d 186 (Tenn. 1987). It is clearly shown that Cannon knew the property was in the midst of foreclosure proceedings, that he never informed the plaintiffs of this fact and that he accepted from the plaintiff more than $11,000 in order to close the transaction and then disbursed the funds to the other defendant Grover McCormick pursuant to the settlement sheet presented at closing.

■ Cannon argues in this court that he cannot be held liable because there was no proof introduced in the trial court as to the standard of care of attorneys handling real estate closings or any proof that he violated the standard of care established. We agree with Cannon that no such proof was introduced, and we note further that the record in this case is grossly deficient in many respects.

In *Cleckner v. Dale*, 719 S.W.2d 535 (Tenn.App.1986), this Court said:

Whether a lawyer's conduct meets a particular standard of conduct is not a question of law for the court. It is a question of fact for the jury or other finder of fact to decide. *Gruse v. Belline*, 138 Ill. App.3d 689, 93 Ill.Dec. 297, 301, 486 N.E.2d 398, 402 (1985) and *Glidden v. Terranova*, 12 Mass.App. 597, 427 N.E.2d 1169, 1170 (1981). See also Wade, *The Attorney's Liability for Negligence*, 12 Vand.L.Rev. 755, 776 (1959). Whether a lawyer's conduct meets the applicable professional standards is generally believed to be beyond the common knowledge of laypersons. Thus, *except in cases involving clear and palpable negligence,* most courts considering the issue have held that cases of legal malpractice cannot be decided without expert proof regarding the applicable standard of care and whether the lawyers conduct complies with this standard. (citations omitted). (emphasis added).

719 S.W.2d at 540.

It appears to this Court that when an attorney handling a real estate transaction takes money from a purchaser to remit to a seller and, at the time of closing, knows that the property is in foreclosure, but fails to advise purchasers of the foreclosure and takes no corrective measures to protect the purchasers' investment, the attorney is guilty of clear and palpable negligence. Cannon did not testify in his own behalf nor did he introduce any proof in this cause

**684**

to rebut plaintiffs' proof. The trial court erred in dismissing plaintiffs' case as to Cannon.

■ As to defendant Grover McCormick, the proof indicates that he received the proceeds from the sale of the property and signed a warranty deed to the property which plaintiffs received at closing. The proof also indicates that the original listing contract which enabled Boyle to act as the agent to sell the property, was executed by Lovie Hicks, as the owner of the property. The record discloses that Lovie Hicks was the beneficiary of the estate of the deceased owner, Porter Thomas. Here again, the record is grossly deficient and contains no information concerning the title to the property. Lovie Hicks is referred to as the beneficiary of the Porter Thomas estate and signed the listing contract, which at least creates the inference that she was the owner of the real estate. Unless there was some specific provision in Porter Thomas' will granting an interest in the real estate to the executor of the estate or providing for the sale of the property by the executor, the executor of the estate acquires no title to the real estate. See *Crook v. Crook*, 208 Tenn. 262, 265–266, 345 S.W.2d 679, 680 (1961). A deed from the executor when the title to the property is in an heir or devisee of the deceased would be a nullity. Because of the deficient record in this case, we are unable to determine the exact status of title in order to determine whether the deed from the executor of the estate has any validity. For some reason, not revealed by the record, plaintiffs' counsel did not question the validity of the warranty deed given to the plaintiffs. In any event, the proof does show that the executor of the estate obtained the proceeds from the sale and that the agent handling the sale on behalf of the seller failed to inform the purchasers of the imminent loss of the property. Under these circumstances, we feel that the recipient of the proceeds, acting as the seller of the property, is equally liable for the nondisclosure.

■ The judgment of the trial court in favor of the defendants Lester, McCormick and Cannon is reversed and they are held jointly and severally liable with Boyle Investment Company to the plaintiffs.

■ The second issue presented for review by Boyle is:

Did the trial court err in granting an award of attorney fees against Defendant Boyle Investment Company?

This case has no proof of any agreement between the parties concerning attorney's fees nor have we been cited to any statute allowing recovery thereof. In *Goings v. Aetna Casualty & Surety Co.*, 491 S.W.2d 847 (Tenn.App.1972), this Court said:

... In the absence of a statutory provision therefor, a contractual agreement between the parties, attorney fees incurred by a plaintiff in recovering a judgment for damages is not a proper element of damages and the allowance of such is contrary to the public policy of Tennessee. (citations omitted).

491 S.W.2d at 848.

Accordingly, the judgment of the trial court awarding attorney's fees to the plaintiffs is reversed.

■ The third issue presented by appellant is:

Did the trial judge err in granting Plaintiffs' post-petition Motion for costs?

Appellant argues that the additional costs assessed should not be allowed because the affidavit in support thereof furnished by plaintiffs' counsel is deficient. While the affidavit does leave something to be desired, we believe the court properly exercised its discretion in awarding the extra costs. We find this issue to be without merit.

Although the judgment of the trial court specifically stated, "It is the intention of the court to restore the parties to the status quo," the judgment for defendant Grover McCormick, precludes recovery of the proceeds of the sale from the party who obtained the proceeds. Obviously, there can be no return to the status quo under this situation. In any event, it appears to this Court that the major problem with this case, aside from the minimal allegations of the complaint and the very meager proof

presented at trial, is the long delay in bringing this case to a conclusion. The events leading to the dispute occurred in August, 1983. Suit was filed in December, 1983, and the trial was not held until June, 1986, almost three years after suit was filed. The case was then held under advisement for approximately two years, which brought the wheels of justice to at least a slow grind, if not a full stop. Approximately five years from the time suit was filed a final judgment was entered. Plaintiffs' plight has been compounded by the long delay, for which we can find no satisfactory explanation in the record.

We also note that the trial court's intent to return the parties to status quo is not accomplished by the amount of the judgment awarded. Plaintiffs were awarded $11,063.02 for the amount paid for the purchase of the property, but the record reflects that this is the amount paid by plaintiffs at closing. Plaintiffs had previously paid $500 earnest money which, together with the cash payment made at closing, constitutes a total cash payment of $11,-563.02 made by plaintiffs. They are entitled to a recovery of this amount.

In summary, the judgment of the trial court in favor of the defendants, Lester, McCormick and Cannon is vacated and the judgment awarding attorney's fees is vacated. The judgment of the trial court is modified to award judgment to the plaintiffs against defendants, Dorothy L. Lester, Boyle Investment Company, Grover McCormick, individually and as the Executor of the Estate of Porter Thomas, and Dunlap Cannon, III, for $11,563.02 plus prejudgment interest of $4,464.17, plus additional costs of $1,139.04 for a total of $17,166.23.

Costs of the appeal are assessed against appellees, Boyle, Lester, McCormick and Cannon. The case is remanded to the trial court for such further proceedings as may be necessary.

HIGHERS and FARMER, JJ., concur.

## ORDER DENYING PETITION TO REHEAR

Defendant Grover McCormick has filed a petition to rehear in which he argues, among other things, that this Court did not have jurisdiction to review the judgment as to defendant McCormick.

The record reflects that although appellees did not file a notice of appeal, they presented additional issues for review concerning the trial court's action in dismissing the case as to defendant McCormick. Defendant McCormick was served with a copy of appellee's brief which presented an issue seeking to reverse the trial court's judgment in his favor. Although McCormick initially chose to take no action in response to appellee's brief, he now states on petition to rehear that he was not served a copy of the notice of appeal as required by Rule 5, T.R.A.P. This defense comes too late as the failure to serve a copy of the notice of appeal on opposing counsel is not jurisdictional and may be waived. *See G. F. Plunk Const. Co. v. Barrett Properties, Inc.,* 640 S.W.2d 215 (Tenn.1982).

Pursuant to the provisions of Rule 13, T.R.A.P., "cross appeals, separate appeals and separate applications for permission to appeal are not required." The Comment to this section states in part:

... [s]ince neither the issues presented for review nor the arguments in support of those issues are set forth in the notice of appeal, there seems to be no good reason for so limiting the questions an appellee may urge on review. The result of eliminating any requirement that an appellee file his own notice of appeal is that once any party files a notice of appeal the appellate court may consider the case as a whole.

The remainder of the petition to rehear presents matters which this Court considered in its original Opinion.

Accordingly, the petition to rehear is denied.

/s/Crawford
CRAWFORD, J.

/s/Highers
HIGHERS, J.
/s/Farmer
FARMER, J.